# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6768 | **DATE** | 12/6/2001 |
| **CASE TITLE** | KRAMER vs. BANK OF AMERICA SECURITIES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 1/30/2002 at 10:00 A.M...
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (33-1) for summary judgment is granted/denied in part. Motion (24-1) to file brief in excess of fifteen pages is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 07 2001 | |
| ✓ | Docketing to mail notices. | | date docketed | 40 |
| | Mail AO 450 form. | | CM | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| DW | courtroom deputy's initials | 01 DEC -6 PM 5:06 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

DOCKETED
DEC 0 7 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COLLEEN P. KRAMER,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA SECURITIES, LLC,<br><br>Defendant. | No. 99 C 6768<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

In her suit against defendant Bank of America Securities, LLC ("BOA"), plaintiff Colleen P. Kramer alleges that she was demoted because of her disability, multiple sclerosis ("MS"), and subsequently terminated because of her disability and in retaliation for asserting her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* BOA moves for summary judgment on both counts.

## Background

Ms. Kramer was hired by BOA in October 1995 as a member of the Middle Market Syndicated Finance Group, which structures complex financing arrangements for mid-size companies throughout the Midwest. In October 1998, BOA and NationsBank merged, after which the Chicago Market Syndicated Finance Group was formed. Ms. Kramer was made team leader of this group, and she reported to Mary Lynn Moser. On March 2, 1999, Ms. Moser and Ms. Kramer met to discuss the group's progress during which Ms. Moser expressed her concerns about Ms. Kramer's job performance, specifically her leadership ability and interpersonal skills. They met again on April 22, 1999, at which time Ms. Moser again expressed the same concerns regarding Ms.

Kramer's job performance. On May 28, 1999, Ms. Moser once more expressed to Ms. Kramer the same concerns about her job performance and gave Ms. Kramer a memo outlining those concerns and indicated that a performance review would be conducted in 90 days. The next day, Ms. Kramer was replaced by Eric Schubert as team leader, but she retained her title, salary, and benefits. On July 12, 1999, Ms. Kramer received an e-mail from the head of the Syndicate Desk expressing disappointment with her job performance, and Ms. Moser discussed the issues raised in this e-mail approximately three or four times over the next few months leading up to September 1, 1999. During this time, Ms. Kramer had numerous disagreements with Mr. Schubert and Ms. Moser regarding various issues on some proposed transactions, and both parties agree that these disagreements were unrelated to Ms. Kramer's alleged disability or assertion of rights under the ADA. In a memo to Ms. Kramer dated September 1, 1999, Ms. Moser expressed continuing concern with Ms. Kramer's job performance, and this memo stated that if Ms. Kramer's job performance did not improve over the next 30 days, her employment would be terminated. On October 7, 1999, Ms. Kramer was informed that her job performance had not improved and that her employment with BOA was terminated.

Ms. Kramer was diagnosed with MS in 1993, and she describes its effects since October 1998 as limiting her ability to use her left hand but not to the extent that it affected her ability to perform job functions. Between October 1998 and October 1999, Ms. Kramer alleges that she began experiencing dizziness and shakiness when deprived of sleep. During this time, Ms. Kramer was able to run three to four miles up to four times a week, and she also traveled out of town for business four or five times a month. Ms. Kramer's physical therapist advised her to stop running such long distances after she started to trip and drag her foot in May 1999. In a letter from her attorney dated June 18, 1999, Ms. Kramer requested accommodations for her alleged disability,

2

noting that job-related stress was aggravating her multiple sclerosis. The letter requested that Ms. Kramer be excused from early morning meetings and that she be allowed to take breaks as needed. Ms. Kramer claims that she was never excused from early morning meetings but admits that she was never denied a break because she never requested one. Ms. Kramer did not tell Ms. Moser about her illness prior to her replacement as team leader, and Ms. Kramer admits that she cannot prove that Ms. Moser knew of her illness at the time of the meeting and memo on May 28, 1999. On September 24, 1999, Ms. Kramer filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and sent notification via e-mail on September 28, 1999.

## Discussion

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." After considering the facts of this case in the light most favorable to the plaintiff, I find summary judgment to be appropriate for the discrimination claim but not the retaliation claim for the reasons laid out below.

## Count I: Discrimination

Under the approach laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), a plaintiff alleging employment discrimination must first establish a prima facie case, after which the burden shifts to the defendant who must then show a legitimate, nondiscriminatory reason for its actions. To show a prima facie case of disability discrimination,

3

Ms. Kramer must show that (1) she was or is disabled; (2) she performed her job satisfactorily and (3) she was subjected to an adverse employment action. *See McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1166 (7th Cir. 1998); 42 U.S.C. § 12102(2). The parties dispute whether there is a fourth element to this test, namely a showing that similarly situated non-disabled employees were treated more favorably. Since Ms. Kramer fails to establish a prima facie case of disability discrimination under the test she herself proposes, I find it unnecessary to discuss this particular issue.

Resolution of Ms. Kramer's discrimination claim turns on whether she can show a "disability" as defined by the ADA. Under the ADA, an individual has a disability if (1) she has an impairment that substantially limits one or more major life activities; (2) there is record of such impairment; or (3) she is regarded by her employer as having such an impairment. 42 U.S.C. § 12101(2). The impairment must constitute a substantial limitation on a major life activity before it can be deemed a disability for ADA purposes. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506 (7th Cir. 1998). A substantial limitation is one that "significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes." *Weiler v. Household Finance Corp.*, 101 F.3d 519, 525 (7th Cir. 1996) (citing 29 C.F.R. § 1630.2(j)(3)(i)).

Ms. Kramer asserts that her MS significantly impairs her ability to work in that she must rest more and thus cannot work extremely long hours. However, Ms. Kramer does not allege that her ability to perform a wide range of jobs is substantially limited, and to demonstrate a substantial limitation, it is not enough to show that her impairment "prevented [her] from performing one narrow job for one employer." *Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir. 1997). Even if she did allege that her job was one of a class or wide range of jobs, it is questionable whether the limitation on her ability to work was in fact significant. Ms. Kramer does not dispute the fact that

4

she traveled out of town on business four of five times a month throughout her employment, or that, shortly before her termination, she was running three or four miles a day three to four times a week. Although Ms. Kramer claims that her physical therapist advised her to stop running so much, she does not testify that she followed this advice. She admits that she never requested breaks, even though she requested that accommodation. Additionally, in challenging BOA's stated reasons for her demotion and discharge, Ms. Kramer argues insistently that her work performance was excellent up to the time of her termination, which cuts against her argument that her illness significantly impacted her work capacity. Hence, although Ms. Kramer alleges that her illness places a substantial limitation on her ability to work, I do not find enough evidence to support this contention.

Because Ms. Kramer cannot show a substantial limitation on her ability to work and thus cannot establish that she is "disabled" as defined by the ADA, I grant summary judgment on the discrimination claim.

## Retaliation

To establish a prima facie case of retaliation, Ms. Kramer must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; (3) there exists a nexus of causation between the protected activity and her termination. 42 U.S.C. § 12203(a). There is no dispute that the first two prongs of this test are met. With regard to the third element, to establish a causal link, Ms. Kramer needs to show "that the protected activity and the adverse action were not wholly unrelated." *Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir. 1997) (citation omitted). For the purpose of defeating summary

judgment, Ms. Kramer need only raise a genuine issue of fact as to whether there is some connection between her discharge and her attorney's letter of June 18, 1999, and/or her EEOC complaint.

Ms. Kramer asserts that BOA's sole basis for terminating her employment is her lack of "social ability." Although BOA contends that there are other reasons for her discharge, I will accept Ms. Kramer's version of the facts. BOA has explained that "social ability" is a phrase "meant to summarize in a shorthand manner the multitude of attributes that she expected in a team leader and senior structurer," and forms of this phrase's definition appear in the list of team leader qualities that are given to team leaders. Ms. Kramer's demotion involved her removal from the position of team leader which resulted in the retention of her title, salary, and benefits, but the elimination of her supervisory responsibilities. It is unclear to me why BOA continued to perceive a lack of "social ability" and base Ms. Kramer's termination on this deficiency when the aspects of her position most related to "social ability" had been eliminated. In a memo to Ms. Kramer dated September 1, 1999, Ms. Moser expressed concerns with her "team leader capabilities" and her "social ability." However, at that time, Ms. Kramer was not a team leader, and she had been removed from that position three months ago.

Additionally, Ms. Kramer had been employed by BOA for three years prior to being team leader in October 1998, and there is no evidence of concerns about her "social ability." In a performance review dated January 26, 1998, Ms. Kramer is described as "exhibit[ing] an increased level of teamwork" and "clearly work[ing] better with her colleagues," and her overall performance rating was "exceeds expectation." In another performance review dated January 19, 1999, she received a higher performance rating, and no concerns about "social ability" or the equivalent were expressed. Looking at the evidence before me, it appears that concerns about Ms. Kramer's "social ability" did not arise until March of 1999. It has not been made clear to me how Ms. Kramer's job

6

responsibilities prior to being a team leader and subsequent to her demotion differ, and without further evidence of how Ms. Kramer's job performance went from exceeding expectation after three years of employment to necessitating termination within one year's time, I cannot conclude that a genuine issue of fact does not exist.

Under the *McDonnell Douglas* burden-shifting test, if Ms. Kramer can establish a prima facie case of retaliation, BOA would then have to show a legitimate nondiscriminatory reason for discharging her. If BOA can do so, Ms. Kramer would then need to show that BOA's stated reason is a pretext for unlawful actions by proving either (1) it has no basis in fact; (2) it is not the "real" reason; or (3) it is insufficient to warrant the discharge. *Lenior v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir. 1994). For the same reasons I find that there is a genuine issue of fact regarding the causal nexus issue, I also find that there is a genuine issue of fact with respect to pretext. I am not convinced that BOA's stated reason for discharging Ms. Kramer can, on this record, be found to justify its action or even to be found to be the sole cause of its action. Consequently, I am denying summary judgment on the retaliation claim.

For the reasons stated above, the summary judgment is granted with regard to the discrimination claim and denied with respect to the retaliation claim.

ENTER:

James B. Zagel
United States District Judge

DATE: 6 Dec 2001